[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married in Scarborough, New York on September 12, 1987. There is one child of the marriage, Coffin Lauten Gagne, born July 22, 1992. The child lives with the plaintiff ("wife"). The parties have been living separate and apart since February 1999, when the defendant husband ("husband") moved out of the family home. Their marriage was dissolved by decree of this court on November 15, 2000 at which time the parties filed a Separation Agreement which was approved by the court. However, subsequent to the entry of the decree of dissolution, the matter was reopened based upon the motion of the wife. Following a hearing, the court made a finding that there was not a mutual meeting of the minds with regard to the Separation Agreement and reopened the judgment for purposes of financial orders only. The matter was then tried to the court over the course of three days.
The wife is 42 years old and has a high school education. She has taken some courses beyond high school related to her employment. During the course of the marriage she worked for approximately four months doing bookkeeping work in the husband's office. She works 21 hours a week at Chase Manhattan Bank in Rye as a part time teller where she earns approximately $13 per hour. She has a variety of ailments including CT Page 11379 Epstein-Barr, carpal tunnel syndrome, arthritis, and chronic fatigue. In addition, she has severe allergies and takes Claritin. The cumulative effect of her ailments and her child care responsibilities prevents her from working full time at present.
The husband is 50 years old and is currently self-employed. He was married twice before. He has a degree in engineering from New York University and a scientific background and describes his health as good. He worked in the real estate development firm of Robert Martin, however, in 1993 he opened his own firm called Gagne Development Co., Inc. He works as a consultant overseeing the master plans for large-scale projects, mainly golf courses. He has overseen such projects as the Country Club of Purchase ($100 million), St. Andrews in Hastings ($1.4 million), Ridgeway Country Club ($4 million), and he has an interest in the Ferry Point Park Golf Course in the Bronx covering 222 acres ($32 million). The latter is currently stalled for a variety of reasons. In testimony, he indicated that he does have a profit position in the Ferry Point Park project, and if completed he will be entitled to a 17.5 percent share of the net profit.
At the time of the marriage the husband indicated that he had owned three residential properties in New York State, two on Acker Avenue in Ossining and a home on Olde Willow Road in Briarcliff Manor. In 1994 he sold one lot on Acker Avenue for $76,500, and later on, in 1995 he sold the Briarcliff Manor home for a profit of $250,000. The total, amounting to $326,500, was invested in the purchase of the lot and the construction of the family home on 15 Harkim Road., Greenwich. At the time of the hearing, he still owned one property in Ossining, New York with a value between $50,000 — $60,000. The purchase price for 15 Harkim Road was approximately $407,500, and the husband took out a $100,000 mortgage. Title to the house was placed in his name. The Greenwich home has now been sold, and the proceeds are currently being held in escrow. The division of these finds is the primary source of contention between the parties. In addition, the husband held an IRA and a 401(k) plan totaling approximately $175,000. During the course of the current proceedings, without the prior knowledge of the wife, and in derogation of the automatic orders, he borrowed against these plans which loans are virtually equal their total value.
If the testimony of both parties is to be believed, problems in the marriage began to arise about 1996. Neither party appears to have been strictly faithful to their marriage vows. The wife has had a succession of extramarital affairs. She testified that the husband was verbally abusive throughout the marriage, using derogatory and demeaning language. In addition, the wife believes that the husband has also had multiple partners. This he denies. The husband is currently seeing one CT Page 11380 Natasha Grayson, who offered testimony in court with regard to the nature of their relationship. Her testimony and that of the husband was somewhat conflicting with regard to the extent of their relationship. Ms. Grayson is currently receiving alimony and/or child support pursuant to a court order. The court finds her to be less than credible on this point because of her obvious self interest. The court believes that she and the husband have a significant and ongoing relationship which could well have some impact on his finances, in particular his housing expenses. In addition, the wife testified extensively with regard to her belief that the husband has not been totally straightforward with regard to his personal and business finances. The court finds that both of these people, in particular the husband, present themselves as selfish and self-absorbed. Neither has seen fit to make any major changes in their lifestyle — au paire, country clubs, travel, and expensive meals. This is especially true of the husband. The parties have apparently gotten hooked on the good times. They have overextended themselves without giving any thought to preparing for the inevitable rainy day. The court feels that the husband's business is related in a large measure to the ups and downs of the economy. However, it also believes that he has been less than candid with regard to his prospects, and that he is, in fact, biding his time and withholding his best efforts, pending the outcome of the present proceedings. The wife on the other hand, has presented herself to the court as vulnerable. This position, too, lacks complete credibility. The court believes that her problems stem more from her limited educational background rather than from her physical condition, because the court has observed that the latter has not prevented her from traveling to places such as Cancun and carrying on an active social life.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in Sections 46b-56, 46b-81, 46b-82, 46b-84, and 46b-215a of the Connecticut General Statutes, including the Child Support and Arrearage Guidelines Regulations, hereby makes the following findings:
1. That it has jurisdiction.
 2. That the allegations of the complaint are proven and true.
 3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed to said breakdown.
 4. That by decree of this court dated November 15, CT Page 11381 2000, the marriage of the parties was dissolved on the grounds of irretrievable breakdown.
 5. That by a stipulation (#159) dated January 2, 2001, the parties have agreed that their marriage has been dissolved by decree of this court dated November 15, 2000, and that the provisions Article 2 of the Separation Agreement of the parties (#153) dated November 15, 2000, relating to the custody and visitation of the minor child, as on file, shall remain in full force and effect, and that all financial issues were referred to the court for disposition after hearing, the balance of said Separation Agreement being null and void.
 6. That the presumptive basic child support obligation of the parties is $366.00 per week (which sum includes a contribution toward the health insurance premium for the minor child); and that the husband's share is $326.00 per week.
 7. That the fair market value of the real estate at 15 Harkim Road, Greenwich, Connecticut, is $2,100,000 based upon the sale of said property during the pendency of this action; and that the equity therein, after the payment of the mortgage and expenses is approximately $1,000,000.
 8. That title to the real estate located at 15 Harkim Road, Greenwich, Connecticut, was vested solely in the name of the husband; that the husband made a significant monetary contribution to the original purchase and construction of same using approximately $326,500 from the sale of other properties (Ossining and Briarcliff Manor) standing in his sole name at the time of the marriage; that during the marriage, both parties made significant contributions to the maintenance and preservation of this asset; that said property is a marital asset subject to equitable distribution; and that it would be equitable and appropriate to take the joint contributions of the parties as well as the initial financial contribution of the husband into consideration at the time of the division of this asset. CT Page 11382
 9. That the husband has an earning capacity of at least $120,000 per annum; that the court considers his formal education and his past history of substantial earnings significant factors in this finding; and that it is equitable and appropriate to base the financial orders of the court thereon.
 10. That the wife has a present earning capacity of $15,000 per annum; and that the court considers her health, the length of the marriage, her child care responsibilities, and her limited education to be significant factors in this finding.
 11. That the wife will at some point in the future become self-supporting; and that it is equitable and appropriate that the court order time-limited alimony
 12. That at the time of the marriage of the parties, the husband was the sole owner of a certain parcel of real property located on Acker Avenue, Ossining, New York; that it has a fair market value of between $50,000 and $60,000; that the wife has made no contribution toward the acquisition, maintenance, and preservation of same; and that it is equitable and appropriate that the husband keeps same free and clear of any claims by the wife.
 13. That the wife will have limited opportunity to provide for her retirement; that during the marriage, the husband accumulated retirement finds amounting to approximately $175,000; that in derogation of the automatic orders he has borrowed against these assets in an amount virtually equal to their value; and that it is equitable and appropriate that the wife receive an offset in whole or in part from other funds to be paid to the husband as a result of this decree.
 14. That each party shall have ample liquid assets, and that it is equitable and appropriate that each pay their own attorneys' fees and costs incurred in this action.
CT Page 11383 ORDER 1. The parties shall have joint legal custody of the minor child, COLLIN LAUTEN GAGNE, born July 22, 1992. The primary residence of the minor child shall be with the wife, subject to the reasonable, liberal and flexible visitation rights of the husband all of which are more particularly described in Article 2, subsections A. through G., of a certain Separation Agreement of the parties dated November 15, 2000, as on file with the court, which provisions the court finds to be fair and equitable under all the circumstances and which the court hereby incorporates by reference herein. The parties shall consult with one another concerning all major issues involving the minor child, including but not limited to, health, education, and religious affiliation and training. In the event that parties are unable to agree upon any issue regarding custody and/or appropriate visitation, they shall first bring the matter to the Family Relations Office prior to a determination by the Court.
 2. Commencing September 1, 2001, and monthly thereafter, the husband shall pay to the wife the sum of $1,500.00 as and for child support (which sum includes a contribution toward the medical insurance premium for the minor child), until such time as the minor child shall reach the age of eighteen years. The foregoing notwithstanding, if the minor child shall turn eighteen years old and is still in high school, then, in that event, the child support shall continue until the first day of next month following graduation from high school or his nineteenth birthday, whichever shall sooner occur, pursuant to Section 46b-84 (b) C.G.S.
 3. Commencing September 1, 2001, and monthly thereafter, the husband shall pay to the wife the sum of $1,500.00 as and for periodic alimony, until the death of either party, the remarriage of the wife, or August 31, 2006, whichever shall sooner occur; and that, commencing September 1, 2006, and monthly thereafter, the husband shall CT Page 11384 pay to the wife the sum of $1,000.00 as and for periodic alimony, until the death of either party, the remarriage of the wife, or August 31, 2010, whichever shall sooner occur.
 4. The net proceeds from the sale of the real estate located at 15 Harkim Road, Greenwich, Connecticut, which are currently being held in escrow, shall be divided, 65% to the husband and 35% to the wife. The distribution to both parties pursuant to this paragraph, together with the adjustment to the wife to be made pursuant to paragraph 10 hereof, shall be made within fourteen (14) days hereof
 5. The real property located at Acker Avenue, Ossining, New York, shall remain the sole property of the husband free and clear of any claims by the wife.
6. Personal property shall be divided as follows:
 A. The child's furniture shall remain in the wife's residence.
 B. Except as otherwise set forth herein, the home furnishings (other than the child's furniture) shall be divided as nearly equally as possible. In the event that the parties are unable to agree upon a division, the issue is hereby referred to Family Relations for resolution and recommendation.
 C. Each party shall be entitled to keep the automobile which they are currently driving free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same.
 D. Each party shall keep the current balances in their existing bank accounts free and clear of any further claims by the other.
 E. The husband shall be entitled to keep his interest in Gagne Development Co., Inc. free CT Page 11385 and clear of any further claims by the wife.
 F. The court has reviewed Article 6 of the Separation Agreement of the parties dated November 15, 2000, in particular subsections A., B., C., D., and F., as on file, and finds same to be fair and equitable under all the circumstances, and hereby incorporates said subsections by reference herein.
 7. The wife shall maintain health insurance for the minor child so long as the husband shall be obligated to pay child support, and for so long as such coverage shall be available to her as an incident of her employment at reasonable cost. The husband shall share the cost of such coverage as part of his child support obligation hereunder. In the event that said health insurance is unavailable to her at reasonable cost through her employment, the parties shall be equally liable for the cost of a plan having the same or substantially similar coverage for the child. Unreimbursed medical, dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses for the minor child shall be divided by the parties, 65% by the husband and 35% by the wife. The provisions of Section 46b-84
(e) shall apply.
 8. The husband shall maintain so much of his existing life insurance, whether term or whole life, in a minimum amount of $450,000, and shall name the minor child the irrevocable beneficiary in the amount of $300,000 thereof for so long as he has an obligation to pay child support under the terms of this decree, and he shall name the wife as irrevocable beneficiary in the amount of $150,000, so long as he has an alimony obligation to her. The husband shall provide the wife with proof of such coverage and the designation of beneficiaries not less frequently than annually at her request.
 9. Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits, and they CT Page 11386 shall indemnify and hold each other harmless from any further liability thereon.
 10. By way of partial offset, the wife shall be entitled to the sum of $75,000 from the husband's share of the net proceeds from the sale of the real estate at 15 Harkim Road, prior to any finds being distributed to the husband.
 11. Each party shall be responsible for their respective attorneys' fees and costs incurred in connection with this action.
 12. The wife shall be entitled to claim the personal exemption for the minor child commencing with the tax year 2001 and thereafter.
 13. The Court hereby orders an Immediate Wage Withholding Order pursuant to Section 52-362 C.G.S. in order to secure the payment of the alimony and child support orders.
THE COURT
SHAY, J.